JACK MANOWITZ, APPELLANT, v. ESY KANOV ET AL., RESPONDENTS.

Argued October 30, 1930—Decided April 10, 1931.

"This matter comes before me upon a rule obtained by the defendant Benny German, and directing Louis Feinstein,

assignee of the defendant Esy Kanov, to show cause why the judgment for twenty-four thousand ($24,000) dollars, recovered by the plaintiff, Jack Manowitz, against all the defendants herein and assigned by said plaintiff to the defendant Esy Kanov and by him assigned to said Louis Feinstein should not be canceled of record and the last execution issued thereon by the said Louis Feinstein returned by the sheriff of Hudson county for cancellation; and the property levied upon by virtue of said execution released from such levy.

"From the testimony taken under the rule and from the records of the court and in public offices of the county of Hudson, it appears that the aforesaid judgment was recovered by the plaintiff, Jack Manowitz, against all of the above-named defendants on October 21st, 1927, in a tort action wherein all of the defendants were charged as joint tort feasors with having conspired to drive the plaintiff out of business as a live poultry dealer. Execution was immediately taken out and a levy made upon property of the defendants, including that of the defendant Benny German.

"On February 15th, 1928, the defendant Esy Kanov paid the plaintiff herein ten thousand ($10,000) dollars for said judgment and took a written assignment thereof to himself on the same date, which assignment was not recorded in the Hudson county clerk's office until June 23d, 1928.

"In the meantime, on March 9th, 1928, the defendant Benny German, upon notice to the plaintiff Jack Manowitz, obtained from the judge of the Circuit Court, before whom the action was tried, an order in which it is recited that said judgment had been paid and satisfied, and directing the sheriff to forthwith release all levies and attachments made by virtue of said execution.

"Thereafter, on October 2d, 1929, the said Esy Kanov assigned said judgment in writing to Louis Feinstein for the expressed consideration of one dollar and other good and valuable considerations, which assignment was recorded in said office on October 3d, 1929. On October 4th, 1929, said Louis Feinstein, the assignee of the judgment debtor, Esy

Kanov, caused another execution to be issued on said judgment against all of the defendants for the full amount thereof, and a levy thereunder was made upon the personal property of the defendant Benny German, who had not contributed anything to the sum of ten thousand ($10,000) dollars, which had been paid by the defendant Esy Kanov to the plaintiff. In this situation the defendant Benny German applied for and obtained the aforesaid rule to show cause directed to the said Louis Feinstein as aforesaid.

"Several reasons are urged by the defendant Benny German in support of this rule, among them being the proposition that the judgment in question was adjudged to be satisfied by the aforesaid order of the Circuit Court judge made on March 9th, 1928, which released all levies under the first execution above mentioned. It seems sufficient, however, to deal with the interesting and fundamental question of whether a joint tort feasor who had purchased the judgment from his judgment creditor and taken an assignment thereof to himself individually, may reassign the judgment to a third party so as to enable the latter to issue execution thereon and recover as against a non-contributing joint tort feasor.

"The rule is firmly settled in this state that there can be no contribution between joint tort feasors and this is so whether the wrong is the result of force or procured merely from ignorance or carelessness, the reason being that the law will not undertake to adjust the burdens of misconduct. *Newman* v. *Fowler*, 37 *N. J. L.* 89; *Public Service Railway Co.* v. *Matteucci*, 105 *Id.* 114.

"And it is also generally accepted as settled that one judgment debtor, upon paying the judgment recovered against himself and others as joint tort feasors, and taking an assignment thereof in his own name individually, does not acquire thereby any right of contribution as against the non-contributing judgment debtors. 34 *Corp. Jur.*, §§ 1063, 1064; *Boyer* v. *Bolender*, 129 *Pa. St.* 324; 18 *Atl. Rep.* 127; *Adamas* v. *White Bus Line*, 184 *Cal.* 710 (at *p.* 713). And the case of *Brown* v. *White*, 29 *N. J. L.* 514, holding that the payment of

a judgment by one joint debtor will not operate to satisfy the judgment where it appears that the payment was not intended to have that effect, is not contrary to the general rule previously expressed, because the judgment in the last cited case arose out of a contractual obligation where the right of contribution is, of course, recognized, and also because the court was very careful to specify that it was not 'called on to determine what the equities between' the joint debtors were 'but simply whether what had been done amounted to a legal satisfaction of the judgment.'

"Since, therefore, the judgment debtor Esy Kanov, could not enforce contribution from his joint tort feasors, either through the medium of execution on the assigned judgment or by a new suit for contribution, the last question presented, assuming for the purpose of argument only that the assignment of said judgment to him did not amount to an outright satisfaction thereof, whether he could by assigning it for a valuable consideration to said Louis Feinstein, confer upon him the right to collect thereon from the defendant Benny German.

"Here, however, we are confronted by the universal rule that the assignee of a judgment takes it subject to all the equities, defenses and agreements subsisting between the original parties, whether he had notice of them or not, acquiring in this respect no stronger rights than his assignor possessed. 23 *C. G. C.* 1422; 34 *Corp. Jur.* 646, § 996; *Traphagen* v. *Lyons,* 38 *N. J. Eq.* 613; *Starr* v. *Haskins,* 26 *Id.* 414; *Stout* v. *Vankirk,* 10 *Id.* 78; *Cook* v. *McCahill,* 41 *Id.* 69.

"The assignee of a judgment succeeds only to the rights of his assignor, and cannot claim protection against subsequent equities which were binding on his assignor.

"The assignee stands in no better position than his assignor stood at the time of the assignment. 34 *Corp. Jur.* 641, § 986, and 651, § 999.

"Since, therefore, the first assignee of this judgment, Esy Kanov, one of the joint tort feasors, could not have collected on the judgment because of the rule against contribution

among joint tort feasors, and since his assignee, Louis Feinstein, stands in no better position than his assignor, it follows that Feinstein cannot collect upon the judgment against the defendant German. He cannot be heard to complain, however, because he knew or should have known by referring to the judgment record itself, that his assignor was one of the judgment debtors and a joint tort feasor who could not collect on the judgment as against his fellow wrongdoers. To hold otherwise would be to completely destroy the effect on the rule against contribution among joint tort feasors, because otherwise in cases of judgments against such parties, the one who first purchased and took an assignment of the judgment, could sell it to a third party and thus indirectly secure contribution, or perhaps indemnification, because the assignee under such circumstances could not successfully issue execution against his assignor, as to whom the judgment would have been paid (*McIllvane* v. *T. J. M. Cont. Co.*, 7 *N. J. Mis. R.* 825), but would have to issue it against the other tort feasors, and, if he so desired, for the full amount of the judgment. Such a situation would give complete indemnity to the tort feasor first purchasing the judgment. This would be as much against public policy as to permit contribution to be obtained directly. The rule against contribution among joint tort feasors is not based on the ground that contribution in such a case is inequitable. Indeed the application of the rule often works injustice as between the wrongdoers. The rule rests on considerations of public policy; it being against the policy and maxims of the law to adjust equities between wrongdoers, or to permit a person to found an action of his own wrong-doing. 13 *C. J.* 829, § 19.

"Since the assignee, Louis Feinstein, cannot enforce the judgment in question against the defendant Benny German, the latter is entitled to have it canceled as to himself and a rule to show cause is the proper practice to bring the matter before the court even in the hands of an assignee. *First National Bank* v. *Hoffman*, 68 *N. J. L.* 245; *McIlvane* v.

*T. J. M. Contracting Co., supra.* It follows, therefore, that the execution should also be returned into court and canceled, and the property levied on under said execution released therefrom.

"Something was said at the argument to the effect that the property of said Benny German levied on under said execution had been sold by the sheriff at public vendue after the issuance of the rule to show cause. If this is so there is no competent proof thereof before me to show it, nor does said rule ask for relief in that event, and I cannot, therefore, invoke the practice suggested in *Bruere* v. *Britton, 20 N. J. L.* 268, and order the proceeds arising from any such sale restored.

"In making the rule to show cause absolute, however, it will be without prejudice to the right of the defendant Benny German, if the facts make it necessary so to do, to apply for further relief in the premises upon proper proof."

For the appellant, *Samuel Tartalsky.*

For the respondents, *Edward P. Stout.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Judge Ackerson in the Circuit Court.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, DEAR, WELLS, JJ. 12.

*For reversal*—None.